**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


MICHAEL NORRIS,

      Petitioner,

-vs-                                  Case No. 8:06-CV-0036-T-30TBM

JAMES R. McDONOUGH,[1] et al.,

      Respondents.

_____/

## ORDER

    Petitioner, an inmate in a Florida penal institution proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § § §2254 challenging his 2003 convictions for armed burglary (6 counts), burglary of a dwelling (15 counts), grand theft (18 counts), and petit theft (2 counts) entered by the Twelfth Judicial Circuit Court, Manatee County, Florida (Dkt. 1). Respondents have filed a response to the petition (Dkt. 14), and Petitioner has filed a reply thereto (Dkt. 22). The matter is now before the Court for a decision on the merits.

### Background

    On March 10, 2000, Detective Michael Schue, Manatee County Sheriff's Department ("MCSD"), interviewed two witnesses that implicated Petitioner in unsolved burglaries in Manatee County. One of the witnesses, a county worker who knew the residents of the house he witnessed being burglarized on March 8, 2000, gave a detailed description of the

---

[1]James R. McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

burglar and the car he was driving. According to the witness, Petitioner gained entry to the house by kicking in the door of the residence. Petitioner exited a short time later, returned to his car, and drove away. The witness identified Petitioner from a photo array. The second witness gave Detective Schue the license number and a description of the vehicle he saw parked in front of another house at or about the time that it was burglarized. The descriptions of the car driven by the burglar matched, and the second witness identified Petitioner as the driver of the car from a photo array.

Responding to an alert issued by the MCSD for a car matching the description given by the two witnesses, uniformed officers conducted a traffic stop of a suspect vehicle. Petitioner was the driver. He did not have a valid driver's license, and the officers observed firearms inside the car. Petitioner was placed under arrest and transported to the Manatee County Sheriff's Office. His car was transported to the police station.

After being Mirandized[2] and waiving his rights, both orally and in writing, Petitioner was interviewed by Detective Schue. An audio recording was made of the interview. Petitioner confessed to having been involved in several armed burglaries committed in Manatee County and consented in writing to the search of his car and his residence, contingent on his presence during the searches.

Based on his experience as a law enforcement officer, Detective Schue determined that despite Petitioner's statements regarding the other burglaries, there was not sufficient probable cause to charge Petitioner with those offenses at that time. Petitioner was, however, charged with the March 8, 2000 burglary. The following day, Petitioner posted bond.

---

[2]See Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

During interviews conducted on March 21 and March 29, 2000, Petitioner again waived his rights and spoke with Detective Schue regarding other burglaries he had committed in surrounding counties. Petitioner surrendered himself to the Sarasota County Sheriff's Department ("SCSD") on March 17, 2000, and an arrest warrant was issued for him in Hillsborough County on March 27, 2000. Petitioner quickly found himself charged with committing an aggregate of 27 burglaries, 27 grand thefts, and 9 armed burglaries in Hillsborough, Sarasota, and Manatee Counties between January 19 and March 10, 2000.

Petitioner entered a guilty plea in Hillsborough County to charges of armed burglary, grand theft (8 counts), and burglary of a dwelling ( 6 counts); he was sentenced on September 26, 2001. In Sarasota County, Petitioner entered a plea of nolo contendere to charges of armed burglary (3 counts), burglary of a dwelling (5 counts), and grand theft; he was sentenced on December 3, 2001.

On September 8, 2003, and November 10, 2003, a hearing was held in Manatee County on a motion to suppress Petitioner's statements to Detective Schue and evidence seized from his car and residence.[3] During the hearing, the trial court heard the testimony of Detective Schue, Detective Bobby Lewis, and Petitioner's girlfriend, oral argument by counsel, and audio recordings of Detective Schue's interviews with Petitioner on March 10, 16, 17, 21, and 29, 2006. At the conclusion of the second hearing, the trial court rejected Petitioner's argument that he did not knowingly and voluntarily waive his *Miranda* rights, finding as follows:

> [W]hat I was originally going to do was take some of this under advisement, and then I started realizing that it was a lot clearer to me than I had thought.

---

[3]When the officers searched Petitioner's car, they found three loaded guns inside. The search of his residence yielded 42 grams of marijuana and numerous items that Petitioner identified as stolen property. Dkt. 16, Ex. 001, Vol. II at R. 220; 257; 281.

The most probably interesting aspect of this whole matter was Ms. Snapp. So I'm going to start from her and work backwards.

My take on that is she [Ms. Snapp] had certain impressions -- and I found her to be a very impressionable young woman anyway. I mean, she's madly in love, they were living together, after a roaring courtship, the whole bit. She didn't even know what was going on, that's how much evidently she was naive about things. And she was very impressive as a witness, and I took a lot of notes on her, and I had reviewed her statements in the actual transcript from our last hearing. She does base a lot on her impressions of things. But she does also state that Detective Schue made certain statements. Now, do I believe a detective simply because he's the detective? Or do I believe the young lady who was involved for three weeks with this romance with somebody who turns out to have been doing a string of burglaries. And I don't know. I think Ms. Snapp is a believable, very believable, credible, nice human being, who had impressions. And as the State correctly said, there may be conflicts in some of the testimony.

But the bottom line on all of this is, it's quite clear to me -- and unlike *Brockelbank*,[4] which I knew is an older case and I had read but I couldn't remember exactly -- this man was not treated immediately to -- or taken to a hospital for his heroin withdrawal -- I mean, things were actually done there. And they didn't arrange in this case for a judge to set $1,000 bond. So it's similar, but it's certainly not identical by any means.

I think in this particular case the motion was well written, it was adopted by Mr. Delgado, he was very thorough about it in his cross-examination, and as of course was the State in her thorough direct. But I see here from the totality of the circumstances a young man. Michael Norris, not so young that he didn't know what he was doing, but evidently wanting to rid himself and get his life straight of the guilt that he must have been feeling for ripping off all these people. And as they say, confession is good for the soul, and that's what he was doing, day after day after day after day. He was going around like a talking machine, confessing, signing waivers, talking to lawyers. And still after talking to lawyers, even though he didn't hire them, he was still confessing like crazy.

So the totality of the circumstances lead me, probably well beyond a preponderance of the evidence, to feel that these statements and everything that's done here were freely and voluntarily done. And so I will in no way suppress anything.

---

[4]*Brockelbank v. State*, 407 So. 2d 368, 369 (Fla. 2d DCA 1981) (having transported defendant to a police station following his arrest for a residential burglary, the officers granted defendant's request for treatment for heroin withdrawal and transferred him to a hospital where he later agreed to cooperate with the police in their investigation in exchange for his immediate release from jail).

Getting back again to Ms. Snapp. I think it is unusual. It's been done before. It's certainly not unusual to buy somebody on a ride-around lunch. That has been done before. When Mr. Norris, who seemed to be having an attachment to the officers here, and he didn't like the ones in Sarasota - - hey, maybe we'll have a beer, they were sort of buddies, he was buying into the buddy thing - - they weren't really his buddies. But if somebody is having diarrhea of the mouth and just confessing, confessing, confessing, of course they're going to go along with that. That's how they got all these things cleared. I don't care what anybody says, it's clearing cases. But unlike Hillsborough County, the man ends up getting charged for it because no promises were made not to be charged.

So bottom line is, even though it was unusual to invite the girlfriend along, I think Detective Schue liked Mr. Norris, and Mr. Norris liked Detective Schue. They probably still do. And they figured, well, the young lady's been helpful, Michael has certainly been purging himself, so why not allow them a little contact. And that's all it was, that's the way I believe about it.

So the motion to suppress is denied.

Dkt. 16, Ex. 1, Vol. II at R. 290-293 (footnote added).

Represented by an assistant public defender, Petitioner entered a guilty plea to the Manatee County charges. He was sentenced on December 23, 2003, to serve a term of 15 years imprisonment on each of the armed burglary (5 counts) and burglary (16 counts) charges and 5 years on each of the grand theft charges (18 counts), with the sentences to run concurrently.

On direct appeal, Petitioner asserted that the trial court erred in denying the motion to suppress his confessions and all evidence discovered as a result of the information he provided to law enforcement, alleging that Detective Schue made improper promises to him to induce him to confess. Petitioner's convictions and sentences were affirmed on December 3, 2004. *See Norris v. State*, 892 So. 2d 1031 (Fla. 2d DCA 2004) (table decision). Petitioner did not pursue post-conviction relief in state court.

On December 19, 2005, Petitioner filed his request for federal habeas relief.  In his petition, Petitioner raises the only claim he raised on direct appeal, to wit, that the trial court erred in denying his motion to suppress because his statements were "obtained through police violations [of] Petitioner's 4th, 5th, 6th[,] and 14th Amend. U.S. Constitutional rights." Respondent has filed a response to the petition asserting that Petitioner has not met the criteria for relief under §2254(d)-(e).  For reasons discussed below, the Court agrees.

### Standard of Review

Pursuant to 28 U.S.C. § § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § § 2254(d) governs the review of those claims.  *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell,* 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

### Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "alleges facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). For reasons discussed below, an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section §2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim.").

### Discussion

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Harrell v. Butterworth*, 251 F.3d 926, 930 (11th Cir. 2001); *Bottoson v. Moore*, 234 F.3d 526, 530-531 (11th Cir. 2000).

A state prisoner seeking a writ of habeas corpus must establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). As discussed above, Petitioner entered a plea of guilty to the Manatee County charges. The Eleventh Circuit has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process.  If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger,* 921 F.2d 1125, 1141 (11th Cir.) (en banc), *cert. denied,* 502 U.S. 835 (1991).

It is well-established state and federal law that guilty pleas waive all but jurisdictional claims up to the time of the plea. *Tollett v. Henderson,* 411 U.S. 258, 266-67 (1973) (holding that a guilty plea represents a break in the chain of events which has preceded it in the criminal process); *Stano v. Dugger,* 921 F.2d 1125, 1150 (11th Cir.), *cert. denied,* 502 U.S. 835 (1991); *Parker v. State,* 603 So. 2d 616 (Fla. 1st DCA 1992); *Dean v. State,* 580 So. 2d 808, 809 (Fla. 3d DCA 1991) (citing *Boykin v. Alabama,* 395 U.S. 238, 243 (1969) (finding that a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial)). This waiver includes constitutional claims. *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Dermota v. United States,* 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied,* 498 U.S. 837 (1990). Moreover, guilty pleas foreclose most claims from collateral attack. *See United States v. Broce,* 488 U.S. 563, 569 (1989).

Petitioner's claim was waived by virtue of his voluntary election to enter his guilty plea, which cut off nonjurisdictional challenges to the conviction's constitutionality. See *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1993) (finding that "[o]nce a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained."); *Brady v. United States*, 397 U.S. 742, 757-58 (1970) (guilty plea waived defendant's right to challenge constitutionality of federal kidnaping statute); *United States v. Martinez*, 69 F.3d 1215, 1224 (1st Cir. 1995) (guilty plea waived right to challenge drug conspiracy statute as unconstitutionally vague). The standard applicable to a guilty plea also applies to a plea of *nolo contendere*. See *Hudson v. United States*, 272 U.S. 451, 455 (1926); *Pesovic v. Singletary,* 1998 WL 173189, *6 (M.D.Fla.) (citations omitted) (finding that "the law applicable to a guilty plea is also applicable to a plea of *nolo contendere*."); *Henderson v. Singletary*, 837 F. Supp. 1176, 1178 (M.D. Fla. 1993) (same). See also *Carter v. Collins,* 918 F.2d 1198, 1200 n.1 (5th Cir. 1990) (citations omitted).

Petitioner does not allege that he pleaded guilty because the circumstances that allegedly coerced his confession had an abiding impact that tainted his plea or otherwise challenge the validity of his plea. See *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Moreover, there is nothing in the petition which raises an inference that the discussions between Petitioner and Detective Schue should be characterized as a plea negotiation. See *United States v. Robertson*, 582 F.2d 1356, 1368 (5th Cir. 1978) ("Generally, a person who has been fully advised of his rights may make a full or partial admission to the arresting officers. Such a statement, if otherwise admissible under the general law of confessions,

still is admissible despite the fact that the accused makes some request of those in charge. Such a request, without more, does not transform a confession into a plea negotiation.").[5]

Even if the Court found that Petitioner did not waive his constitutional claims when he entered his guilty plea, it would be precluded from granting Petitioner the relief he seeks. While the state court did not cite federal law in support of its rejection of Petitioner's motion, "a state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparaza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 7-8 (2002)). Thus, to be entitled to relief under § §2254, Petitioner must establish that the state court's determination that his claims lack merit was objectively unreasonable under the law as enunciated by the United States Supreme Court or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § § 2254(d).

As Respondent notes, Petitioner's challenge to the denial of his motion to suppress evidence is foreclosed by the holding in *Stone v. Powell,* 428 U.S. 465, 481-82 (1976) ("Where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). *See also Mincey v. Head*, 206 F.3d 1106, 1125 (11th Cir. 2000). As 214 pages of transcript reflect, Petitioner was accorded a "full and fair" opportunity to be heard on the claim in state court (Dkt. 16, Ex. 001, Vol. 1 at R. 80-149;

---

[5]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Vol. II at 150-295). The factual issues were well-developed during the two-day hearing, and the trial court's findings are adequately supported by the record. *See Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled in part, Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5 (1992).

As to the denial of Petitioner's motion to suppress statements he made to Detective Schue, this claim lacks merit. Established in *Miranda v. Arizona*, 384 U.S. at 478-79, the Fifth Amendment right to counsel and right to remain silent are intended to operate prophylactically to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. In his petition, Petitioner acknowledges that he waived his *Miranda* rights but contends that had Detective Schue not "coerced" him into confessing with false promises, he would not have waived his rights and confessed to the burglaries. Petitioner reasons, therefore, that the trial court erred in denying his motion to suppress.

The record reveals that Petitioner presented the factual basis for these claims to the Florida courts, fully litigating the matter before the trial and appellate courts. *See Norris v. State*, 892 So. 2d 1031 (Fla. 2d DCA 2004) (table decision). As discussed *supra*, the trial court heard testimony from the MCSD detectives, and Petitioner's girl friend, as well as audio recordings of Petitioner's interviews with the detectives. At the conclusion of the hearing, the trial court denied the motion to suppress. Petitioner does not assert that his right to due process was violated during the interrogation or the suppression proceedings.

The voluntariness inquiry turns on whether the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception, *see Moran v. Burbine*, 475 U.S. 412, 421 (1986), and focuses on police overreaching, *see Colorado v. Connelly*,

479 U.S. 157, 170 (1986) (a defendant's perception of coercion, which is solely caused by his unique mental status, is not a factor).   Both of these inquiries are based upon the totality of the circumstances. See *Moran*, 475 U.S. at 421.

There is no allegation that Petitioner has low intelligence or was in any way mentally impaired when he made the incriminating statements. This is not an instance of a long detention – the March 10, 2000 interview began at 7:40 p.m. and ended at 9:00 p.m., by which time Petitioner had confessed to being involved in 22 burglaries.   During the suppression hearing, Petitioner did not give the trial court any reason to find that the officers' conduct during the drive arounds was in any way coercive, and no police impropriety is apparent in the record.

To the contrary, as Detective Schue's testimony during the suppression hearing reflects, from March 11, 2000, until his arrest by the SCSD on March 17, 2000, Petitioner appeared voluntarily at the MCSD each day to discuss the burglaries with Detective Schue. After Petitioner was contacted by the SCSD detective and asked to surrender himself, he drove to MCSD to talk with Detective Schue about another burglary before he drove to the SCSD and surrendered (Dkt. 16, Ex. 001, Vol. II at R. 187-198). When asked why he thought Petitioner kept reappearing at his office, Detective Schue testified that:

> Detective:   He was overly cooperative.  I mean, he was there every day.  He – he wanted to get everything past him.
>
> State:   Why do you think he was so helpful?  Or wanted to be so helpful.
>
> Detective:   I honestly think that he really wanted to get it all done and over with, past him, and that he really realized that he messed up pretty bad.
>
> State:   Did he seem remorseful?
>
> Detective:   Yes.

Dkt. 16, Ex. 001, Vol. II at R. 211-12.

In his petition, Petitioner acknowledges that he confessed on the night of his arrest because he wanted to "bond out of jail" and needed to insure that he would have access to his car and money he had "stashed" at an undisclosed location. Prior to his arrest by the SCSD, Petitioner contacted Detective Schue and agreed to a "drive around" during which he pointed out places he had burglarized.

During a telephone conversation initiated by Petitioner three days after his arrest by the SCSD, Petitioner asked Detective Schue to meet with him at the jail. In his petition, Petitioner asserts as follows:

> [Petitioner] called Det. Schue to meet with him to arrange to surrender more stolen jewelry that he had found. In the recorded statement, one of the reasons [Petitioner] said that he was doing this was his hope of showing good faith so that he could get a lower bond in Sarasota. At no time was he ever dissuaded of such a perception by Detective Schue. Instead, Det. Schue permitted [Petitioner] to harbor such false beliefs in order to obtain more continued cooperation.

Dkt. 1 at 6D. There is nothing in the record that indicates that any action by Detective Schue gave rise to Petitioner's "hope" of gaining favorable treatment by the SCSD.

Petitioner agreed to cooperate in a second drive around because he wanted an opportunity to "meet with his girlfriend . . . and have lunch and spend time with her before returning to jail." Detective Schue testified that Petitioner proposed the second drive around, conditioned on Detective Schue allowing him to see his girl friend while he was away from the jail. Petitioner's girl friend testified that she first heard of the lunch arrangement from Petitioner and later received a telephone call from Detective Schue advising her that Petitioner was with him and they would be stopping at Wendys for lunch.

To the extent that Petitioner contends that Detective Schue's statement "as it stands right now, it's going to be for burglary, one count" was a promise that Petitioner would not be charged with other burglaries upon further investigation, the Court finds Petitioner's argument unpersuasive, as did the trial court in finding that "no promises were made not to be charged." Petitioner has failed to rebut the presumption of correctness accorded the trial court's factual findings.

Noting that the burglaries were "unsolved cases" before he was arrested, Petitioner contends that the bargain he made with the investigating officers "benefited both sides" (Dkt. 1 at 6E). Petitioner's statements were clearly "the offspring of reasoned choice." *See United States v. Mitchell*, 322 U.S. 65, 68 (1944) "[I]n cases coming from the state courts in matters of this sort, we are concerned solely with determining whether a confession is the result of torture, physical or psychological, and not the offspring of reasoned choice."); *Dailey v. United States*, 261 F.2d 870, 873 (5th Cir. 1958), *cert. denied*, 359 U.S. 969 (1959).

The trial court rejected Petitioner's motion to suppress, and the state district court affirmed that decision. *See Norris v. State*, 892 So. 2d 1031 (Fla. 2d DCA 2004) (table decision). Although the state district court denied relief without entering a written opinion, in this circuit, a "state court's summary, which is to say unexplicated, rejection of the federal constitutional issue qualifies as an adjudication under § 2254(d) so that it is entitled to deference." *Isaacs v. Head*, 300 F.3d 1232, 1259 (11th Cir. 2002) (citing *Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002)).

Given the credibility assessment required to find a voluntary waiver in this case, and the deference due state-court factual findings under AEDPA, it cannot be said that the trial

court's resolution of this claim was contrary to or an unreasonable application of Supreme Court law.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.      The Petition for Writ of Habeas Corpus (Dkt. #1) filed pursuant to 28 U.S.C. § §2254 is DENIED.

2.      The **Clerk** is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida on this ___6___ day of June, 2007.

JAMES S. MOODY, JR.
United States District Court Judge

Copy furnished to:
*Pro Se* Petitioner/Parties of Record
SA:jsh/jd

F:\Docs\2006\06-cv-36.dismissal.wpd